998 So.2d 1026 (2008)
Deborah Fierro THURMAN (Formerly Johnson), Appellant,
v.
Glen P. JOHNSON, Appellee.
No. 2007-CA-00713-COA.
Court of Appeals of Mississippi.
September 2, 2008.
Rehearing Denied January 13, 2009.
*1027 Kelly Michael Rayburn, Gulfport, attorney for appellant.
William E. Tisdale, attorney for appellee.
Before LEE, P.J., CHANDLER and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Deborah Fierro Thurman, formerly Deborah Johnson, and Glen P. Johnson were divorced by judgment of the Harrison County Chancery Court. Deborah now appeals the portion of that judgment awarding Glen primary physical custody of the couple's minor child, Tyler Johnson. Finding no error, we affirm the chancellor's award of custody to the father.

FACTS
¶ 2. Deborah and Glen were married on April 27, 1997, in Alaska. At that time, Deborah had custody of her two children from a previous marriage. The family moved to Biloxi, Mississippi in 1999, and the only child of their marriage, Tyler, was born later that year. Glen was a staff sergeant in the United States Air Force, and Deborah was a dental assistant.
¶ 3. Both parties testified that they had recurring disputes throughout their marriage. These disputes consisted of screaming matches and occasionally involved physical abuse. In January 2003, both Glen and Deborah were arrested on charges of domestic violence. The charges were non-adjudicated upon the completion of anger-management classes.
¶ 4. Glen and Deborah decided to separate in March 2004, just prior to Glen's deployment to Iraq. Before he left on deployment, Glen moved his belongings from the marital home to a storage unit. The parties agreed that Tyler would live with Glen's parents in Montana during Glen's period of deployment.
¶ 5. Before the couple separated, Deborah began a relationship with Mike Thurman. At trial, Deborah admitted this was an adulterous relationship. Deborah continued to see Thurman throughout the course of the chancery court proceedings, and the two were married after her divorce from Glen was finalized.
¶ 6. At the time of the trial, Glen was serving a ten-month sentence of incarceration at Keesler Air Force Base after he pled guilty to the theft of a plasma television from the base. As a result of the guilty plea, Glen lost his job, his wages, *1028 and his retirement funds from the Air Force. Glen planned to move back to Montana, where he had employment secured, should he be granted custody of Tyler.
¶ 7. Upon his return from Iraq, Glen initially filed for a divorce based on irreconcilable differences. He later amended his complaint and sought the divorce based on Deborah's adultery. Deborah filed an answer and a counterclaim for divorce on the ground of habitual cruel and inhuman treatment. Both parties sought custody of Tyler.
¶ 8. After the trial, the chancellor granted Glen a divorce on the ground of adultery and awarded custody of Tyler to Glen. Deborah filed a motion for a new trial or, in the alternative, for reconsideration, which was denied by the chancellor.
¶ 9. Deborah now appeals the chancellor's decision to award custody to Glen. She claims that the chancellor improperly applied the Albright factors and placed overwhelming emphasis on her adulterous relationship with Thurman.

STANDARD OF REVIEW
¶ 10. Matters involving child custody are within the sound discretion of the chancellor. Sturgis v. Sturgis, 792 So.2d 1020, 1023(¶ 12) (Miss.Ct.App.2001). "A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous." Sanderson v. Sanderson, 824 So.2d 623, 625(¶ 8) (Miss.2002) (citing Consol. Pipe & Supply Co. v. Colter, 735 So.2d 958, 961(¶ 13) (Miss.1999)). "This Court will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Id. at 625-26(¶ 8) (quoting Kilpatrick v. Kilpatrick, 732 So.2d 876, 880(¶ 13) (Miss.1999)). Legal questions are reviewed de novo. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002).

ANALYSIS

Whether the chancellor erred in his analysis of the Albright factors by placing overwhelming emphasis on Deborah's adultery.
¶ 11. Deborah claims that the chancellor improperly emphasized her adulterous relationship in determining that Glen should be awarded custody of the couple's child. Specifically, Deborah claims that the chancellor relied too heavily on the moral fitness factor in his Albright analysis and improperly sanctioned her for having an affair by denying her the custody of her son. She argues that she should be awarded custody of the child because the chancellor weighed more factors in favor of her than in favor of Glen.
¶ 12. The supreme court set forth the following factors to be considered by the chancellor in custody matters: age, health, and sex of the child; continuity of care prior to the separation; parenting skills and willingness and capacity to provide primary child care; employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of the parents; the home, school, and community record of the child; the preference of the child at the age sufficient to express a preference by law; and stability of the home and employment of each parent. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The chancellor also shall consider any other factors relevant to the relationship between the parent and the child. Id.
¶ 13. Here, the chancellor found that Glen had met his burden of proof *1029 necessary to obtain the divorce on the ground of adultery. Conversely, Deborah failed to prove that she was entitled to a divorce on the ground of habitual cruel and inhuman treatment. In the chancellor's judgment of divorce, he thoroughly examined and made specific findings as to each Albright factor. Deborah was only slightly favored as to two factors: (1) employment of the parent and responsibilities of that employment and (2) physical and mental health and age of the parents. The moral fitness factor favored Glen. The chancellor found that Tyler was not old enough to state a preference, and the chancellor did not specifically state which parent was favored under the factor regarding the stability of the home and employment of each parent. The remaining factors were held to be neutral, favoring neither Glen nor Deborah.
¶ 14. A temporary agreed order entered in this case specifically stated that neither party "shall have overnight guests of the opposite sex not related by blood or marriage when the minor child is present." However, Deborah testified at trial that Thurman regularly slept at her house while Tyler was in her custody. She further testified that she had maintained her sexual relationship with Thurman throughout the trial despite the chancellor's order. Thus, the chancellor found the following under his analysis of the moral fitness Albright factor:
Both Glen and Deborah have moral issues and neither is in a position to be critical of the other. Glen is a convicted criminal[,] and Deborah is an admitted adulteress. Glen's legal issues arise from the theft of a television set from Keesler Air Force Base which was placed in the marital home. The Court finds that Deborah was aware of the fact that the television set was stolen and raised no objection to Glen. However, the Court finds that Deborah has deliberately exposed her children to her immoral activity and has done so in defiance of an Order entered by this Court to which she agreed. Accordingly, this factor favors Glen.
¶ 15. Deborah contends that this finding amounts to a sanction based upon her marital fault, citing Albright, 437 So.2d at 1005, which states, "[m]arital fault should not be used as a sanction in custody awards." In her brief, Deborah states, "[i]f the chancellor places too much weight under the `moral fitness' factor based upon an affair, the decision must be reversed." To support this position, she cites to the following cases: Hollon v. Hollon, 784 So.2d 943, 952(¶ 37) (Miss.2001), finding that the chancellor placed too much weight on the mother's homosexual affair; Brock v. Brock, 906 So.2d 879, 886(¶ 38) (Miss.Ct. App.2005), holding that the chancellor's finding that the mother's adultery did not affect her parental responsibilities was supported by the evidence; and Fulk v. Fulk, 827 So.2d 736, 741(¶ 15) (Miss.Ct. App.2002), stating that the chancellor placed too much emphasis on the mother's affair when the father was also having an affair.
¶ 16. However, it is clear that Deborah's situation is distinguishable from the cases cited. The chancellor's specific findings under the moral fitness factor addressed more than just Deborah's affair. Not only did Deborah have an adulterous relationship before she and Glen were separated, but she continued that relationship throughout the divorce proceedings. Further, she agreed, and the court ordered, that she would not have overnight guests while Tyler was in her custody. Instead, Deborah allowed Thurman to spend almost every night with her at her home in direct violation of the court order.
*1030 ¶ 17. The chancellor also noted that she did not object when Glen brought a stolen television into their home. In fact, Deborah did not report the theft to the Air Force until she and Glen had separated and Glen had been deployed to Iraq. Thus, the chancellor favored Glen under this factor for multiple reasons and not simply because Deborah had committed adultery. As the chancellor stated under the stability of the home factor, "Deborah's behavior of open[ly] living with a man while still married to another and open[ly] defying and ignoring the Orders of this Court, even the Order to which she agreed, concern the Court as it relates to the impact such behavior will have on Tyler."
¶ 18. We also note that the Albright factors are simply a guide and not a set formula for determining custody as Deborah would suggest. The supreme court has ruled that "[w]hile the Albright factors are extremely helpful in navigating what is usually a labyrinth of interests and emotions, they are certainly not the equivalent of a mathematical formula. Determining custody of a child is not an exact science." Lee v. Lee, 798 So.2d 1284, 1288(¶ 15) (Miss.2001). Thus, the fact that Deborah was slightly favored under two factors and Glen was favored under only one factor did not automatically make Deborah the better choice for the custodial parent. We must defer to the decision of the chancellor. "All the factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way he sees fit." Johnson v. Gray, 859 So.2d 1006, 1013-14(¶ 36) (Miss.2003).
¶ 19. It goes without saying that Glen did not exhibit all of the qualities of an ideal parent. However, the record provides substantial evidence to support the decision to grant him custody of Tyler. Given our limited scope of review, and the fact that the findings of the chancellor are supported by the record, we cannot say that the chancellor's decision to award custody to Glen was manifestly wrong or clearly erroneous. Accordingly, this issue is without merit. We affirm the chancellor's judgment.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
CARLTON, J., Dissenting:
¶ 21. I disagree with the majority's decision to affirm the chancellor's grant of custody to Glen Johnson. I find that the chancellor relied too heavily on Deborah Thurman's adultery and placed too much emphasis on the parents' moral fitness, which clearly favored Deborah aside from her adultery. In my view, the chancellor disregarded other factors that favored Deborah; thus, the chancellor erred in his decision to grant custody to Glen. Accordingly, I respectfully dissent.
¶ 22. In the instant case, the chancellor determined that Deborah was favored under the Albright factors pertaining to the employment of the parents and responsibilities of that employment and the physical and mental health and age of the parents. He determined that Glen was favored under the moral fitness factor. Aside from the factor concerning the stability of the home environment and employment of each parent,[1] the chancellor *1031 found that the remaining factors favored neither party.
¶ 23. Thus, the chancellor found that Deborah was favored under two (or three) factors, and Glen was favored under only one factor: moral fitness. I am mindful that "[c]hild custody is a matter of equity which requires more than counting the votes in favor of the mother or father[, and] [a] single factor can weigh so heavily in favor of one party that equity would require granting custody to that parent." Divers v. Divers, 856 So.2d 370, 376(27) (Miss.Ct.App.2003). However, I find that the chancellor relied too heavily on Deborah's adultery in finding that Glen was favored under the moral fitness factor.
¶ 24. As the majority acknowledges, "[m]arital fault should not be used as a sanction in custody awards." Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The majority also notes that it is error for a chancellor to place too much emphasis on a party's adultery in deciding the parent's moral fitness. Hollon v. Hollon, 784 So.2d 943, 952(37) (Miss.2001). However, the majority concludes that the chancellor did not err in favoring Glen under the moral fitness factor because "the chancellor favored Glen under this factor for multiple reasons." I disagree with this finding.
¶ 25. From the chancellor's findings of fact under the moral fitness factor (cited in its entirety by the majority), it is clear to me that the chancellor's findings were premised on Deborah's adultery. The fact that Deborah was aware of and failed to object to Glen's television theft is, in my opinion, largely immaterial and insufficient to justify the chancellor's reliance on Deborah's adultery. Further, I find that it is clear from the chancellor's order that he consciously disregarded how Glen's theft and discharge from the military reflected negatively on Glen's moral fitness.
¶ 26. In my view, the chancellor punished Deborah for her adultery and for violating the agreed court order. "The polestar consideration in custody matters is the best interest of the child, not marital fault." Rushing v. Rushing, 724 So.2d 911, 916(24) (Miss.1998) (citing Moak v. Moak, 631 So.2d 196, 198 (Miss.1994)). In the absence of Deborah's adultery, she would likely be favored under the moral fitness factor. As a result, no factor would favor Glen, and Deborah would unequivocally be entitled to the custody of Tyler.
¶ 27. Because the chancellor placed too much weight on Deborah's adultery, I would reverse the judgment entered by the chancellor and remand this case for the chancellor to reconduct an Albright analysis, specifically stating his finding as to which party is favored under the factor related to the stability of the home environment and employment of each parent.
NOTES
[1] As to the stability of the home environment and employment of each parent, the chancellor did not explicitly state which party was favored, although it appears that the chancellor determined that Deborah was favored. He found that:

At the present time, only Deborah has what could be described as a stable home, even though her paramour lives with her despite the Agreed Temporary Judgment prohibiting such behavior. Deborah's behavior of open[ly] living with a man while still married to another and open[ly] defying and ignoring the Orders of this Court, even the Order to which she agreed, concern the Court as it relates to the impact such behavior will have on Tyler. As of the date hereof, Glen['s] term of incarceration has ended[,] and the Court is not aware of his home or where he resides. The employment of each parent is thoroughly discussed in factor number "4" [and] is incorporated into this factor.