RUSSELL, J.,
for the Court:
¶ 1. Robert Jarrad Collins (Jarrad) was granted a divorce based on adultery from Kimberly Ann Collins (Kim) in the Chancery Court of Lee County, Mississippi. Primary physical custody of their son, Robert Connor Collins (Connor), was granted to Jarrad.
¶ 2. The issue on appeal is whether the chancery court erred in placing undue weight on the moral fitness of Kim. According to Kim, she should be granted sole physical custody or the parties should have been awarded joint physical custody. She argues the case should be remanded with instructions regarding the custody and visitation schedule.
¶ 3. Finding no error, we affirm the decision of the chancery court to grant primary physical custody of Connor to Jar-rad.
FACTS AND PROCEDURAL HISTORY
¶4. Kim and Jarrad were married on June 9, 2001. Connor was born on February 26, 2006. Kim and Jarrad separated in June 2010. Kim filed a divorce complaint on June 7, 2010, alleging that she should be granted a divorce on the grounds of habitual cruel and inhuman treatment or, alternatively, irreconcilable differences. Jarrad filed an answer and counter-complaint, alleging that he was entitled to a divorce on the grounds of adultery, habitual cruel and inhuman treatment, and irreconcilable differences as an alternate ground.
¶ 5. The Chancery Court of Lee County tried this case on September 29, 2010, and December 8, 2010. The court entered its memorandum opinion and judgment on March 22, 2011, granting Jarrad a divorce from Kim on the ground of adultery and dividing the property. The Court granted the parties joint legal custody, with primary physical custody to Jarrad. Custody is the only issue on appeal.
¶ 6. Additional facts will be discussed as they relate to the issue raised.
DISCUSSION
¶ 7. “As this Court has stated on numerous occasions, absent an abuse of discretion, we will uphold the decision of the chancellor.” Brekeen v. Brekeen, 880 So.2d 280, 283 (¶ 4) (Miss.2004). “This Court will not disturb the factual findings of the chancellor unless [they] are manifestly wrong or clearly erroneous.” Id. (quoting Jerome v. Stroud, 689 So.2d 755, 757 (Miss.1997)). “However, where the chancellor improperly considers and applies the Albright factors, an appellate court is obliged to find the chancellor in error.” Id. (quoting Hollon v. Hollon, 784 So.2d 943, 946 (¶ 11) (Miss.2001)). See Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 8. Mississippi case law has clearly declared time and time again that the polestar consideration in all cases dealing with child custody and visitation is the best interest and welfare of the child. Crider v. Crider, 904 So.2d 142, 144 (¶ 6) (Miss. 2005); Brekeen v. Brekeen, 880 So.2d 280, 283 (¶ 5) (Miss.2004); Woodell v. Parker, 860 So.2d 781, 788 (¶28) (Miss.2003); Sellers v. Sellers, 638 So.2d 481, 485 (Miss. 1994); Moak v. Moak, 631 So.2d 196, 198 (Miss.1994); Albright, 437 So.2d at 1005. Additionally, the Legislature has determined: “Custody shall be awarded as follows according to the best interests of the child: ...” Miss.Code Ann. § 93-5-24(1) (Rev.2004) (emphasis added).
*508 ¶ 9. In Albright, 437 So.2d at 1005, the Mississippi Supreme Court outlined the factors to be considered in child custody:
The age of the child ... is but one factor to be considered. Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school[,] and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent[;] and other factors relevant to the parent-child relationship.
¶ 10. In Thurman v. Johnson, 998 So.2d 1026, 1030 (¶ 18) (Miss.Ct.App.2008), this Court held:
We also note that the Albright factors are simply a guide and not a set formula for determining custody.... The supreme court has ruled that “while the Albright factors are extremely helpful in navigating what is usually a labyrinth of interests and emotions, they are certainly not the equivalent of a mathematical formula. Determining custody of a child is not an exact science.” Lee v. Lee, 798 So.2d 1284, 1288 (¶ 15) (Miss.2001).... We must defer to the decision of the chancellor. “All the factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way he sees fit.” Johnson v. Gray, 859 So.2d 1006,1013-14 (¶ 36) (Miss.2003).
¶ 11. As the Mississippi Supreme Court found in Crider, 904 So.2d at 147 (¶ 13), the question of custody “is for the chancellor to determine[,] as he or she is in the best position to evaluate the credibility, sincerity, capabilities and intentions of the parties.” It is clear that the chancellor did not believe Kim’s version of several events.
¶ 12. Kim cites the principle that “marital fault should not be used as a sanction in custody awards.” Brekeen, 880 So.2d at 287 (¶ 20). See also Albright, 437 So.2d at 1005; Smullins v. Smullins, 77 So.3d 119, 129 (¶ 44) (Miss.Ct.App.2011).
¶ 13. Kim admitted to having an adulterous relationship with Austin Haley (Haley). Kim and Haley started seeing each other in October 2008. Jarrad found out about the relationship on July 8, 2009. Photographs were introduced of Kim on a trip to Las Vegas in April 2009, running a marathon in Nashville in 2009 and 2010, and going to Destín, Florida, in May 2010. These trips were without Jarrad or Con-nor. Haley was not in any of the pictures, and there is no indication that Haley was on any of these trips. But Kim admitted to a sexual relationship with Haley in Florence, Alabama; Ridgeland, Mississippi; Birmingham, Alabama; Tunica, Mississippi; and Cullman, Alabama.
¶ 14. Kim testified that she had not seen or talked to Haley since late July or August 2010. However, during Jarrad’s testimony an exhibit was introduced into evidence showing that there were 38 calls between Kim and Haley, totaling 13.5 hours and 1,479 text messages since late July or August 2010. Kim and Haley talked on the telephone three times totaling 81.62 minutes on September 29, 2010, the first day of the divorce trial, according to the exhibit introduced into evidence. The exhibit also showed that there were 7,161 texts and 499 telephone calls totaling 196 hours between Kim and Haley from April 2009 to October 2010.
*509 ¶ 15. Kim also made 140 calls to Al-Anon totaling 58 hours since April 2010. Haley is a recovering alcoholic. At the time that Haley and Kim met, he was married with three children. Haley’s wife got a divorce from him on the ground of adultery in 2009, and she got custody of their three children.
¶ 16. Jarrad’s brother, Darren Collins, videotaped Kim and Haley coming out of a hotel in Birmingham, Alabama, on May 16, 2010. A copy of the videotape was introduced into evidence.
¶ 17. Next door neighbor Shelly Boswell testified that in the fall of 2009, she saw a man pushing a motorcycle out of Kim’s garage around 11:00 p.m. and pushing the motorcycle down the street before driving away. Kim contended that the driver of the motorcycle was a delivery man for Palmtree Productions, but Ann Palmer, the owner of Palmtree Productions, testified that she did not know Kim Collins or know any reason that any of her employees would be at Kim’s house at night or any other time.
¶ 18. It appears from the record that Kim’s adultery was important to show how her behavior with the minor child changed during that period. There was testimony that since her involvement with Haley, Kim appeared to be gone more often and was not around Connor as much as Jarrad. Jarrad’s mother testified that Kim had not been a good mother the last two years because Kim put her relationship with another man before her son.
¶ 19. Joe Johnson testified that he works with Jarrad and is familiar with Jarrad’s schedule. Johnson also testified that Jarrad was his company’s pharmaceutical representative of the year in 2006 and 2007. Johnson further testified that Haley, Kim’s lover, was the cause of his own divorce and had an affair with Johnson’s wife in 2008 to 2004.
¶ 20. As in Smullins, the chancellor expressed concern over Kim’s involvement with another man because of its impact on her relationship with Connor. Thus, the chancellor’s findings “were not a sanction against an adulterous parent....” Smullins, 77 So.3d. at 129 (¶ 46).
¶ 21. We find that the record provides sufficient evidence to support the chancellor’s decision to grant Jarrad primary physical custody of Connor. Given our limited standard of review, and the fact that the chancellor’s findings were supported by the record, we cannot say that the chancellor was manifestly wrong or his decision was clearly erroneous. Accordingly, we find that this issue is without merit, and we affirm the chancellor’s judgment.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. CARLTON, J, CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.