RUBISOFF *v.* RUBISOFF

No. 41969 October 16, 1961 133 So. 2d 534

226

*Smith, O'Hare & Smith,* Cleveland, for appellant.

*Charles L. Brocato, Vincent J. Brocato, Talbot, Sulli-van & Dunbar,* Clarksdale, for appellee.

Rodgers, J.

This case originated in the Chancery Court of the Second Judicial District of Bolivar County, Mississippi, in which appellant sought to enforce the conditions of a divorce decree, and sought a citation for contempt against the appellee for failure to pay alimony under the decree dated October 24, 1950. Petitioner asked for custody of their adopted child, and for a money judgment, including interest, and certain personal property. The chancery court entered a decree denying appellant custody of their child; but entered a judgment allowing the petitioner $14,070 past due alimony to be paid at $165 per month, without interest, and from that decree this case was appealed to this Court.

It appears from the facts of this case that the appellant and appellee met in the City of Chicago where the appellant was a registered nurse at Mt. Sinai Hospital and the appellee was serving as an intern. They were married on March 14, 1939, and they had no children. In the Fall of 1948, they adopted a male child whose name is Paul Carroll Rubisoff. They moved to West Virginia, where the appellee, Dr. Rubisoff, was employed at Charleston General Hospital, and the appellant, Mrs. Rubisoff, continued her work as a nurse. Dr. Rubisoff's health broke down and his wife nursed him back to health, often giving him blood transfusions from her own body. The parties finally came to Columbia, Mississippi, and thence to Shelby, Mississippi,

and for a time the appellant continued to practice her profession as a trained nurse in Clarksdale, Mississippi. Dr. Rubisoff was again ill and the appellant again nursed him back to health. In February 1950, it became necessary for Mrs. Rubisoff to go to the bedside of her father at Crofton, Nebraska, where she remained for approximately two weeks. After this time, the parties became estranged, and in March 1950, Dr. Rubisoff moved to the clinic, separating from the appellant. In May of that year he filed a bill for divorce against appellant. The chancellor entered a decree awarding Dr. Rubisoff a divorce from defendant Beatrice K. Rubisoff, but awarding Mrs. Rubisoff the custody of Paul Carroll Rubisoff, their child, "subject however, to such changes and modifications of this decree in regard to the custody of said child as conditions of parties and the best interest of said child may justify or require * * *" Mrs. Rubisoff was awarded $250 a month alimony for herself and for the support of their child, together with certain personal property described in the decree.

After the divorce, Mrs. Rubisoff went to New Orleans, Louisiana, to live and to work as a nurse, but she fell upon "evil days" and was arrested for giving a bad check. Dr. Rubisoff heard of her plight and went to New Orleans for the purpose of obtaining their child. He got Mrs. Rubisoff to give him an order to the nursery where the child was being kept for the purpose of taking the child away. She claims that the Doctor obtained the order so that he could visit the child in the park for one day. The appellee and cross-appellant took the child with him to his home in Shelby, Mississippi, where he has been since April 8, 1951. The appellee and cross-appellant paid the alimony due to the appellant for a period of six months, after which he discontinued his payments. Mrs. Rubisoff alleges that she often begged the defendant to pay the alimony and bring the child

back to her, but he refused to do so. The defendant denies that the appellant sought the return of the child or requested him to pay past due alimony, although he admits that she called him from New Orleans on the telephone on several occasions.

The issues to be determined here are: (1) Did the appellant have a vested right in the past due installments of alimony, and if so, is she entitled to legal interest thereon; (2) can the chancery court allow an adjustment against the amount due to a wife for money expended by a husband on their child during a long period of time while it remained in his custody; (3) can the chancery court divest a wife of future alimony payments on the ground of misconduct of the wife after the divorce; (4) was the chancellor in error in disallowing the claim for a money judgment against Dr. Rubisoff for the value of personal property awarded appellant in the divorce decree and later repossessed by defendant; (5) can the chancery court permit payment of a judgment for past due alimony in deferred installments; and (6) did the chancery court commit reversible error in failing to find the defendant, Dr. Rubisoff, guilty of contempt of court?

The cross-appellant, Dr. Rubisoff, claims that the original decree was a fraud upon the court and that the court should not have made any award for past due alimony against the cross-appellee; that the cross-appellee's misconduct violated the terms of the original decree; and that the cross-defendant was guilty of laches because she failed to enforce the decree of alimony for a period of many years.

■■ ■ It appears from the evidence in this case that the original decree for divorce dated October 24, 1950, was an agreed decree insofar as the parties could agree to the form thereof. This Court has held that an agreed decree could be modified by the court. Hughes v. Hughes, 221 Miss. 264, 72 So. 2d 677. In this case, how-

ever, the original decree was obtained by Dr. Rubisoff, and his bill for divorce sets out the fact that he knew the condition of his wife insofar as she was alleged to be a narcotic addict, but notwithstanding the fact that he had full knowledge of her condition, he agreed that his wife should have custody of their minor child. He cannot now therefore be heard to say said decree was obtained by fraud. See Divorce and Separation, 17 Am. Jur. 624, Sec. 529. ▇▇ ▇ The alleged abandonment of the child by Mrs. Rubisoff after the decree does not indicate she obtained a fraudulent decree in a divorce proceeding filed by Dr. Rubisoff, but rather such evidence is useful in determining future custody of their minor child. See Taliaferro v. Ferguson, 205 Miss. 129, 38 So. 2d 471.

▇▇▇ We cannot agree with the statement of the appellee that laches has run against appellant's claim for alimony in this case; because the testimony indicates, and appellee admits, that she called often over long distance telephone, and the chancellor must have believed that since she was in dire need of support, she had asked for his help. This Court pointed out in the case of Laster v. Ard, et ux, 42 So. 2d 737 (Miss. 1949), that "the question of laches is largely addressed to the sound discretion of the Chancellor, and his decision will not be disturbed on appeal unless it is clearly wrong and amounts to an abuse of discretion." This Court applied the seven-year statute of limitations in a similar case, Hollis v. Bryan, 166 Miss. 874, 143 So. 687, in which the Court said: "The complainant was guilty of laches in not bringing suit, or not asserting her rights, within the period allowed by the statute for that purpose." ▇▇ ▇ The true test in determining whether "laches" exists is whether the delay had resulted in injury, embarrassment or disadvantage to any person, and particularly to the person against whom the relief is sought. See Lightsey v. Lightsey, 8 So. 2d 399 (Fla.

1942); Anno., 137 A. L. R. 894; Comans v. Tapley, 101 Miss. 203, 57 So. 567; Smith v. Smith, 211 Miss. 481, 52 So. 2d 1.

 Appellee paid alimony to appellant for a period of six months, but after he obtained custody of their child, he ceased paying appellant. It is a well-settled rule of law in this State that installments of alimony become fixed and vested when due and unpaid. Rainwater v. Rainwater, 236 Miss. 412, 110 So. 2d 608; Gibson v. Clark, 216 Miss. 430, 62 So. 2d 585; Lewis v. Lewis, 213 Miss. 434, 57 So. 2d 163; Guess v. Smith, 100 Miss. 457, 56 So. 166; Schaffer v. Schaffer, 209 Miss. 220, 46 So. 2d 443; Grego v. Grego, 78 Miss. 443, 28 So. 817; 27-B C. J. S., Divorce (g), p. 190. We therefore hold that payments due appellant became vested as they became due for the sum set out in the divorce decree directed to have been paid to appellant by the appellee. We are also of the opinion, and so hold, that each payment bears legal interest from and after its due date, and that the interest should have been added to the amount of past due payments. See above authorities and McCormack v. McCormack, 220 Miss. 116, 70 So. 2d 333. The chancellor was correct in applying the seven-year statute of limitations in limiting recovery of past due installments. See Sec. 733, Miss. Code 1942, Recompiled; Hollis v. Bryan, supra; Schaffer v. Schaffer, supra.

 The chancellor's order in this case, modifying the original decree of divorce so as to reduce past due alimony installments was erroneous, because the alimony payments became fixed and vested as they became due. This rule, however, does not mean that the chancery court cannot adjust equities and claims of the husband against the alimony judgment, plus interest due to the wife, at the time the court is called on to enforce the payment of past due alimony. 17 Am. Jur., Divorce and Separation, p. 788, Sec. 752; Hughes v.

Hughes, supra. The chancellor must therefore be affirmed as to the principal amount found to be due by Dr. Rubisoff for past due alimony, since he had the right to adjust the equities, which he did, by allowing him credit in the total sum of $5,460 against the principal due. This was justified.

 We have not been shown, nor have we been able to find, a case in our jurisdiction in which the question was presented as to whether or not the chancery court could divest a wife of alimony, previously adjudicated to be due, because of her misconduct after the divorce. The divorce decree granted appellee on October 24, 1950, adjudicated the status of the parties, that is to say the appellant was entitled to support from appellee because of the marital contract. A wife's misconduct after divorce in relation to the husband's continued support is a question which has given courts considerable concern. The minority rule holds that "In the case of an absolute divorce, the subsequent misconduct of the wife is held by some courts not to constitute a ground for either reduction or termination in the amount of alimony awarded." 17 Am. Jur., Divorce and Separation, p. 790, Sec. 755. The majority rule is expressed in Sec. 756 of the same text, a part of which is as follows: "Since in some instances the payment of alimony must necessarily proceed solely from the future earnings of the husband, whether the labor be manual or mental, under such circumstances, it might be unconscionable to compel the husband by his daily labor to support the divorced wife in idleness and adultery. Not only reasons of justice, but also those of authority would seem to justify the court in such a case, in exercising its general chancery powers, to modify or revoke its former order." It is also pointed out in Amis Divorce and Separation in Mississippi, Bunkley and Morse, Sec. 6.12: "The argument in favor of revocation under the circumstances is that the court has a continuing juris-

diction over the matter of the subsequent support of the wife by the husband and it would be shocking to the conscience to compel the husband to continue to support the wife by payment of alimony while she is living in adultery with another man.'' On the other hand, where the wife's misconduct after the divorce may have been the result of want and penury brought about by refusal of the husband to pay alimony, the court will not relieve the husband from payment of alimony. ▆▆ ▆▆ In the case at bar, it was the duty of the trier of facts to determine whether or not the alleged misconduct of Mrs. Rubisoff was of such nature as to forfeit her right to future alimony. We are of the opinion, and so hold, that the chancellor had sufficient testimony in the record on which to base a judgment refusing future payments of alimony.

The appellant complains that the chancery court was in error in refusing to allow a money judgment against the appellee for certain personal property awarded her in the divorce decree which was later repossessed by appellee, and that the decree stating ''she is barred by the statute of limitations from making said claim against'' him is erroneous. We are of the opinion, and so hold, that the statute of limitations, Sec. 722, Miss. Code 1942, had barred her claim against appellee for personal property.

▆▆ ▆▆ The chancellor ordered the appellee to pay the judgment for past due alimony in future installments of $165 per month. The appellant claims that this action of the chancellor was erroneous. She insists that the decree of the lower court should be reversed so as to permit issuance of an execution for collection of the judgment for the full amount due for past due alimony. We are of the opinion, however, that the chancellor could allow payment of past due alimony to be paid in future installments, and no error was committed. 17 Am. Jur., Divorce and Separation, p. 798, Sec. 768; Anno. 6 A. L. R.

2d 1319. The appellant is entitled, however, to legal interest on the total deferred balance due.

██ ██ We are also of the opinion, and so hold, that the question of awarding custody of Paul Carroll Rubisoff, ██ ██ and the question of whether or not the appellee should be adjudged in contempt of court, are issues of fact to be determined by the trial court under the facts of this case. We cannot say that the order of the court in this regard was not based upon substantial evidence. Miss. Code 1942, Sec. 2743, Recompiled; Randall v. Randall, 28 So. 19 (Miss. 1900); Schneider v. Schneider, 155 Miss. 621, 125 So. 91; Amis Divorce and Separation in Mississippi, Bunkley and Morse, Secs. 8.14, 6.10, 5.12.

We are of the opinion that this case should be reversed so that the chancery court may enter a proper order in accordance with the above holding, fixing the amount of alimony due, together with interest thereon, and adjusting the equities between the parties. This case is therefore reversed and the trial court is directed to modify its decree in accordance with the above opinion.

Reversed with directions.

*Lee, P. J.,* and *Gillespie, McElroy* and *Jones, JJ.,* concur.