# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CA-00086-SCT

*NORMAN P. OVERSTREET A/K/A NORMAN*
*PALMER OVERSTREET*

*v.*

*ANITA A. OVERSTREET A/K/A ANITA ANN*
*OVERSTREET*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/29/93 |
| TRIAL JUDGE: | HON. GLENN BARLOW |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | A. SCOTT CUMBEST |
| ATTORNEY FOR APPELLEE: | LESTER C. FRANKLIN, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 4/17/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/8/97 |

**BEFORE DAN LEE, C.J., BANKS AND ROBERTS, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This domestic relations dispute requires that we once again visit the areas of equitable distribution, alimony, child support and attorneys fees with the added feature of the propriety of ordering a partition in-kind land bearing the residence of one of the former spouses. We conclude that the chancery court erred in several particulars. We affirm in part, reverse in part, and remand for further proceedings.

I.

¶2. On May 10, 1969, Norman and Anita were married in the state of Texas. Four children were born to the marriage: Deedy, Tammi, Chad, and Nicholas in descending order of age. After moving to the state of Mississippi, the parties, together with another couple, jointly purchased 160 acres of land in 1976. The couples then divided the land equally between them by an exchange of deeds. In 1981, Norman and Anita sold 40 acres to prevent foreclosure and pay off the remaining balance on the

property. In 1984 they sold 12½ acres of land for $12,500.

¶3. The parties offered conflicting testimony regarding the disbursement of these proceeds. Norman claims that Anita received $6,500 and that he received the remainder. Anita claims that she only received $1,800, and that the remainder was used in the construction of a house on the remaining 27½ acres. The house is a bone of contention in the division of property between the parties.

¶4. In the latter part of 1981 the parties separated, and Anita and the children moved to Texas where she found employment as a paralegal. In 1984 there was an attempt at reconciliation. Anita returned to Mississippi in June 1984 shortly after the time that the 12½ acres were sold and construction on the house began. The parties never resided together in the house and there is a sharp dispute as to its state of completion at the time of final separation.

¶5. On September 24, 1984, Anita filed a Complaint for Divorce. The Divorce was granted on September 24, 1985. The court ordered that Anita have custody of all four minor children. Norman was required to pay child support of $25 per week per child until they reach majority; $200 each year in the fall for school materials; and all medical bills above $25 per month. Each party retained a half interest in the remaining 27½ acres with right to partite. Finally, the decree ordered Norman to pay alimony at $200 per month for sixty (60) months to terminate upon a remarriage or for any "reason recognized by law for termination of periodic alimony." The court suspended this provision because Norman was laid off of his employment at the time. The period of suspension was indefinite in that it would last until reviewed by the court in the December term or "until such time as the Defendant may become re-employed with earnings substantially the same as those he was making prior to his termination" from his former employment.

¶6. There was no court review in December of 1985. The next significant event was a petition for modification filed by Norman in July 1992. That petition reflected the fact that Chad, then about to enter the eleventh grade, was present in Mississippi with Norman and sought a change of custody and modification of child support. An order was entered granting temporary custody of Chad to Norman. On August 27, 1992, Anita filed an objection to Norman's petition and a "Petition Invoking Right to Partite and Enforce Alimony Decree" requesting that the remaining 27½ acres be divided and that alimony be imposed by lifting the suspension ordered by the original decree.

¶7. After a hearing held on July 6 and 7, 1993, the trial court, in a bench ruling, ordered the sale of the house and 27½ acres, that the proceeds be divided equally, and that alimony terminate upon the sale. Norman filed a motion for clarification and reconsideration and, on September 8, 1993 the trial court issued a Substituted Ruling which among other things ordered sale of the house and property, the imposition of a $4,200 "credit" in the house to Anita, and permanent custody of Chad to Norman. Deedy and Tammi had married, and Nicholas was the only minor child that resided with his mother.

¶8. With respect to alimony, the court interpreted its prior order to "require" Anita to return to court during the December 1985 term. Nevertheless, the court reviewed the evidence then before the court and concluded that Norman's income had risen to the level required by the decree sufficient to lift the suspension or "abatement" of alimony. The court also concluded that the alimony provision would be "lump sum consistent with the case of *Armstrong v. Armstrong* . . . " The court reasoned that because the original decree limited the period of time for alimony payments to five years the substance of the provision dictated that it be treated as lump sum alimony.

¶9. On December 2, 1993, Anita filed a Motion to Perfect Record requesting clarification of the decision rendered July 6 and 7, 1993, a change in custody, and determination as to child support. On December 6, 1993, the court entered an order "Nunc Pro Tunc" incorporating its previous rulings. Finally, based upon after-developed facts the court decided to issue a Supplemental Ruling and Order on December 30, 1993, granting custody of Chad to Anita.

## II.

¶10. The paramount dispute between Norman and Anita involved the disposition of real property acquired during the marriage. Norman argues that sale of the property is only proper where it will promote the interests of all parties or where an equal division cannot be made. Miss. Code Ann. § 11-21-11 (1972). In opposition to the sale of the house and property, Norman testified that " . . . I built that house out of my sweat and out of my pocket. . . . She was married to me when I poured the foundation and framed it up. I'll give her that." Norman stated that the house was nothing more than a shell while he was married and that Anita left him to move to Texas at this stage of the construction. He claimed that sale of the property should promote the interest of both parties and that his interest which includes a new wife and child that live in the home built on that subject property are not fostered by the trial court's decision to partition by sale.

¶11. Anita argued that the trial court made no error and acted within its discretion by ordering the sale of the property. She does not meet Norman's contention regarding partition head on but instead argues at length concerning the propriety of the interest accorded to her by the Chancellor. With no argument in opposition the point is practically confessed.

¶12. As Norman asserts, the burden is upon the person seeking the sale to show that it is the only feasible method of division of the land. *Vince v. Johnson*, 493 So. 2d 947 (Miss. 1986). Partition in-kind is preferred where there is no substantial proof that a sale would better promote the parties interests or that partition is not possible. *Shaw v. Shaw*, 603 So. 2d 287 (Miss. 1992).

¶13. There is no such showing in this case. Norman offered to divide the 27½ acres in such a manner as to accommodate the value of Anita's interest in the acreage and the house. There is no evidence in this record to support a conclusion that this could not be done. There is ample evidence to suggest that it is not desirable to force Norman to give up the house which he built with his own hands and in which his family resides.

¶14. We conclude that the order of sale is manifest error. We reverse that portion of the chancery court's order and remand this matter to that court for further proceedings in which the feasibility of in-kind partition can be further explored.

## II.

¶15. The parties agreed that the twelve and one-half acres they owned jointly were sold to a Mr. Talbert for $12,500. However, there was conflicting testimony regarding the distribution of the proceeds. According to Norman, the money was divided and "[s]he bought cars with hers and I put mine in the house." Anita stated that all of the $12,500 except $1,800 were put into a savings account in Ocean Springs. Anita argued that the $4,200 interest in the house that she was awarded by the chancery court was appropriate because her half of the $12,500 in proceeds from the jointly

owned property amounted to an involuntary contribution to the house. As for the precise application of her half of the proceeds, Anita claimed that the money was used to build the foundation, roof, walls and that Norman closed the account with $4,500 remaining and opened another account.

¶16. Anita also claimed an equitable interest in the home arising out of her contribution during the brief period of reconciliation. The parties were in sharp dispute as to the degree of completion of the home at their final separation. The chancellor reviewed the testimony and concluded that Anita's interest in the home should be limited to $4,200.

¶17. Although not discussed, the Court appeared to arrive at the $4,200 by crediting Anita with $6,000 of the proceeds from the Talbert sale less $1,800 used to purchase a car. While there is no documentary evidence to support either party's claim as to these sale proceeds, in light of the evidence taken as a whole and the presumption which we created in *Hemsley v. Hemsley*, 639 So. 2d 909 (Miss. 1994), we cannot conclude that the chancellor was manifestly wrong in allowing Anita a $4,200 interest in the home.

III.

¶18. Norman objected to the award of lump sum alimony because it is directly contrary to the expressed language of the original divorce decree. We agree. The chancery court saw fit to order Norman to pay lump sum alimony in the sum of $200 per month until a total $12,000 plus interest was paid. According to the original divorce decree, Norman was ordered to pay Anita $200 per month as periodic alimony for five years, or until Anita would remarry providing explicitly that the award would be governed by the law as to periodic alimony. Eight years later the court felt compelled to deem this lump sum alimony because its limited duration did not fit the periodic label.

¶19. It should be clear, however, that the provision for termination upon a remarriage or upon any event which would terminate it under the law of periodic alimony is also inconsistent with the label "lump sum." "[W]hen the judgment is worded so that we cannot tell whether the award is periodic or lump sum, we will consider the award is for periodic." *Armstrong v. Armstrong*, 618 So. 2d 1278, 1281 (Miss. 1990).

¶20. Fortunately, we have eschewed both the tyranny of labels and our aversion to temporal limits on periodic alimony for a more flexible approach. In *Hubbard v. Hubbard*, 656 So. 2d 124 (Miss. 1995) we approved alimony for a period of years with the periodic features of modifiability and termination upon death or remarriage. We concluded that there is room for a transitional alimony terminable at a time certain. *Id.* at 130.

¶21. While the original alimony award in the instant case appears to fit this category, the fact that it was suspended for a period detracts from our ability to view it in that light. Nevertheless, it was in fact awarded. There was no appeal from that order. It was, therefore, res adjudicata. *Bowe v. Bowe*, 557 So. 2d 793 (Miss. 1990); *Brocato v. Walker*, 220 So. 2d 340 (Miss. 1969). The chancellor had no authority to convert the award to lump sum alimony.

¶22. The chancellor does have the authority to modify periodic, however. Norman argues that the chancellor erred in finding that he is now financially able to make alimony payments and that alimony is still warranted. Factors such as the presence or absence of minor children or any factor which the

court considered "just and equitable" were to be considered in making an alimony award. ***Armstrong v. Armstrong***, 618 So. 2d 1281, 1280 (Miss. 1993). Norman made about $590 per week at Fuel Services, Inc. (74 hours per week at $8.00 per hour) and that he now has the potential to make more. Nor is Anita's action to enforce alimony time barred. Norman's argument that Anita has delayed her claim almost seven years and that it has expired and is barred under the doctrine of laches is hollow. We have held that "[t]he true test in determining whether 'laches' exist is whether the delay had resulted in injury, embarrassment or disadvantage to any person, and particularly to the person against whom the relief is sought." ***Rubisoff v. Rubisoff***, 242 Miss. 225, 234 (1961); ***Gibson v. Clark***, 216 Miss. 430 (1953). Norman's claim that the doctrine of laches prohibits the enforcement of alimony is without merit because the delay was only to Anita's disadvantage and resulted in no injury or embarrassment to Norman.

¶23. Nevertheless, our ruling that the original alimony award was not lump sum and, therefore, did not vest in Anita immediately, requires that we remand this matter to the Chancellor for reconsideration in that light. The Chancellor will then be able to consider the myriad of equitable factors which may affect this award.

V.

¶24. Norman claims that the trial court committed error because the child support increase granted to Anita by the court in its Supplemental Ruling and Order was not preceded by a Motion for Modification of Child Support. We agree.

¶25. Late in this litigation, on December 9, 1993, Anita submitted an affidavit filed per Judge Barlow requesting a change in child support. Thereafter, the Supplemental Ruling and Order of the lower court changed child support from $25 per week per child to $45 per week per child.

¶26. "A child support award can be altered if it can be shown that there has been *a substantial or material change in the circumstance of one or more of the interested parties: the father, the mother, and the child or children, arising subsequent to the entry of the decree to be modified.*" ***Caldwell v. Caldwell***, 579 So. 2d 543 (Miss. 1991); ***Tedford v. Dempsey***, 437 So. 2d 410 (Miss. 1983). (emphasis added). The factors that can be used to determine whether there has been a material change in circumstances include the increased needs that result from maturing age, increased expenses, inflation factor, and others. ***Caldwell***, 570 So. 2d at 547. In her affidavit, Anita indicated that the increase in child support was needed because Nicholas was getting older, and Chad was approaching his senior year in high school. These are precisely the types of factors that the Court in ***Caldwell*** held ought to be considered in determining whether a material change in circumstances has taken place.

¶27. Nevertheless, a change such as this can only be made after a proper pleading and an opportunity to be heard. The record does not reflect that such is the case here. Nor are there specific findings in support of the increase in child support. It follows that we must reverse this portion of the decree and remand this matter to the chancery court for further proceedings.

VI.

¶28. Also, Norman argued that the provision of the Substituted Ruling and Order requiring that he

pay attorney fees were error because Anita failed to make a showing of her inability to pay. Anita argued that the attorney fees awarded by the trial court were modest and that she was under financial stress.

¶29. The question of attorney fees in a divorce action is a matter largely entrusted to the sound discretion of the trial court. *Kergosien v. Kergosien*, 471 So. 2d 1206 (Miss. 1987). However, this does not suggest that the court has a free hand or that its discretionary powers regarding attorney fees go unchecked. The chancellor's discretion is limited in making an award of attorney fees. *Doe v. Doe*, 644 So. 2d 1199 (Miss. 1994); *Smith v. Smith*, 545 So. 2d 725 (Miss. 1989). Attorneys' fees should not be awarded unless the chancellor finds that the party requesting attorney fees can establish an inability to pay. *Dunn v. Dunn*, 609 So. 2d 1277 (Miss. 1992). Anita argues throughout her brief that she has experienced serious financial stress but, there was no finding in the record that Anita was unable to pay her attorneys fees. We reverse and remand the award of attorneys' fees for reconsideration.

¶30. For the foregoing reasons the judgment of the chancery court is reversed and this matter is remanded for further proceedings consistent with this opinion.

**¶31. AFFIRMED IN PART AND REVERSED IN PART; REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**