# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01227-SCT

*PATRICK FRANCIS HEITER*

*v.*

*LINDALYN HEITER, BY AND THROUGH THE GUARDIAN OF HER ESTATE, HAIDEE O. SHEFFIELD, ESQ.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/12/2014 |
| TRIAL JUDGE: | HON. JAYE A. BRADLEY |
| TRIAL COURT ATTORNEYS: | KRISTOPHER W. CARTER |
| | MATTHEW PAUL PAVLOV |
| | WENDY C. HOLLINGSWORTH |
| | HAIDEE SHEFFIELD |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MATTHEW PAUL PAVLOV |
| ATTORNEY FOR APPELLEE: | WENDY C. HOLLINGSWORTH |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 06/09/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:

¶1.     Patrick Heiter sought to terminate or reduce his alimony obligation. He claims error in the chancellor's finding that he had failed to prove a material change in circumstances since his divorce from Lindalyn Heiter that would justify termination or modification of alimony. Finding no error, we affirm the judgment of the chancellor.

### PROCEDURAL HISTORY AND FACTUAL BACKGROUND

¶2.    The following procedural history and facts are taken from the chancellor's Findings of Facts and Conclusions of Law.

> The parties divorced . . . on August 22, 2001. As part of this judgment, . . . Patrick agreed to pay . . . alimony to Lindalyn at the rate of $650.00 per month. Due to her diminished mental capacity, both an attorney and a Guardian Ad Litem represented Lindalyn during the divorce.
>
> On September 12, 2001, . . . a complaint for the establishment of guardianship over Lindalyn [was filed due to] Lindalyn's diminished mental capacity [and her inability] to manage her own financial affairs. . . . [T]he Court appointed . . . co-guardians [for] Lindalyn's estate. On November 20, 2009, the Court removed [the] co-guardians of Lindalyn's estate, . . . appointed [Brenda Stepro] as [Lindalyn's] sole guardian of the person, . . . and . . . appointed Haidee Sheffield [an attorney] as the sole guardian of Lindalyn's estate.
>
> On June 27, 2011, Patrick filed a Complaint to Modify Alimony and Other Relief. In his Complaint, Patrick alleged that Lindalyn was cohabiting with another man and receiving Social Security Disability benefits in addition to alimony. He alleged that a material change in circumstances not foreseen by the parties at the time of the divorce had occurred and asked that the Court terminate his alimony obligations to Lindalyn.
>
> On September 14, 2012, Lindalyn filed her Defendant's Answer to Complaint to Modify and Other Relief, Affirmative Defenses and Counterclaim. She admitted that she had a roommate who was male, but denied that they were cohabiting. She also denied that she was receiving Social Security Disability benefits. . . .[1] Lindalyn also pled a material change in circumstances warranting an increase in alimony.
>
> . . .
>
> On June 6, 2000, before the divorce was finalized, Lindalyn took an IQ test. . . . Further psychological evaluation by Daniel Koch in 2011 confirmed that Lindalyn had several cognitive impairments. These tests revealed that she was unable to properly count money or write checks. She could not coordinate or

_____

[1] Lindalyn and her male roommate applied for SSI benefits in Tennessee, and Lindalyn was approved. However, after Social Security discovered that Lindalyn had resources which exceeded $2,000, it determined she was not qualified and asked that Lindalyn pay back any benefits received.

manage her time properly. . . . Dr. Koch recommended that Lindalyn would most likely need to be in an assisted living situation.

. . .

[Brenda Stepro testified] that Lindalyn was capable of completing small tasks, [but she] lacked organizational skills. . . .

Brenda testified that Lindalyn attempted to live on her own immediately after the divorce, but that [these] attempts [all] ended poorly.[2]

. . .

In 2006, Lindalyn relocated to Tennessee and moved in with . . . Curtis Cole.

. . .

The $650.00 per month Lindalyn receives from alimony is her only income. Her monthly expenses are $939.00 a month. . . . [S]he draws money from the retirement funds she received from the divorce. [At the time of the hearing, Lindalyn had] $151,847.40 in one account and $2,460.92 in another. . . .

. . . [I]t is clear that Lindalyn is also unable to maintain employment. . . .

There is ample evidence that both Curtis and Lindalyn are supporting each other financially, and that Lindalyn would not be able to survive if she did not share finances with him. . . . Lindalyn only pays half of the rent and utilities on the house, while Curtis picks up the remaining expenses. . . . Curtis is currently on disability and does not work. . . .

¶3.     Based on her findings, the chancellor denied Patrick's request to terminate his alimony obligation, denied Lindalyn's request to increase Patrick's alimony obligation,[3] and granted Lindalyn's request for attorney's fees.

---

[2] Brenda testified that Lindalyn had a history of living with her sister and then boyfriends and that they "[took] advantage of [Lindalyn] financially."

[3] The chancellor found that Lindalyn had failed to put forth any evidence to support her counterclaim for an increase in alimony. Lindalyn did not cross-appeal this finding.

**ANALYSIS**

¶4. Findings of a chancellor will not be disturbed on review unless the chancellor was "manifestly wrong, clearly erroneous, or applied the wrong legal standard." *Powell v. Campbell*, 912 So. 2d 978, 981 (Miss. 2005). The Court will review a chancellor's judgment for abuse of discretion. *Hotboxxx, LLC v. City of Gulfport*, 154 So. 3d 21, 24 (Miss. 2015). "The chancellor is charged with weighing the evidence, and this Court will not reverse [her] determination absent manifest error or an abuse of discretion." *Gillespie v. Gillespie*, 594 So. 2d 620, 622 (Miss. 1992).

¶5. Patrick sought to be relieved from paying alimony to Lindalyn. Patrick alleged that Lindalyn was cohabiting with a male and was receiving SSI benefits. Patrick further averred that there had been "a substantial and material change in circumstances since the original decree was entered," and that the original decree should be modified to terminate or reduce his alimony obligation. Traditionally, alimony payments cease only if the receiving party remarries or either party dies. *McDonald v. McDonald*, 683 So. 2d 929, 931 (Miss. 1996). However, a chancellor has authority to modify alimony "upon a finding of a substantial change in circumstances, regardless of any intent expressed by the parties to the contrary." *Id.*

¶6. In 1961, this Court was first faced with whether "a chancery court [could] divest a wife of future alimony payments on the ground of misconduct of the wife after the divorce."

4

***Rubisoff v. Rubisoff***, 242 Miss. 225, 233, 133 So. 2d 534, 536 (1961). Citing Bunkley and Morse's Amis on Divorce and Separation in Mississippi[4] and 17 American Jurisprudence, *Divorce and Separation*, the ***Rubisoff*** Court concluded that a chancery court could exercise its powers by modifying or revoking its prior alimony award. ***Rubisoff***, 242 Miss. at 236, 133 So. 2d at 538. The Court further determined that "it was the duty of the trier of facts to determine whether or not the alleged misconduct . . . was of such nature as to forfeit [the] right to future alimony." ***Rubisoff***, 242 Miss. at 236, 133 So. 2d at 538.

¶7.     Twenty years later, the issue arose again in ***McRae v. McRae***, 381 So. 2d 1052 (Miss. 1980). The Court held that "[n]o hard and fast rule or mold may be laid down to fit at once all of the spectrum of misconduct. The question must be faced and determined on a case-by-case basis." ***McRae***, 381 So. 2d at 1055.

¶8.     Relying on ***Rubisoff*** and ***McRae***, the Court later affirmed the judgment of a chancellor who found that a recipient spouse "had forfeited her right to future support from appellee because her admitted adultery during the period following her divorce was of sufficient duration and frequency to justify the holding of the chancellor." ***McHann v. McHann***, 383 So. 2d 823, 826 (Miss. 1980). The Court stated that "[t]o hold otherwise would be to condone adultery and in effect would penalize a divorcee for marrying but reward her for cohabitation without benefit of marriage." ***Id.***

¶9.     Our law further evolved in ***Hammonds v. Hammonds***, 641 So. 2d 1211 (Miss. 1994), in which the Court held that ***Rubisoff*** and its progeny "clearly reflect a moral judgment that

---

        [4] J.W. Bunkley Jr. & W.E. Morse, Bunkley and Morse's Amis on Divorce and Separation in Mississippi, § 6.12 (1957); 17 Am. Jur. *Divorce and Separation*, § 755.

a divorced woman should not engage in sexual relations; the penalty for such activity is forfeiture of her right to support from her ex-husband." *Hammonds*, 641 So. 2d at 1216. The *Hammonds* Court departed from the prior line of cases and remanded the case for the chancellor to consider the "financial, rather than moral aspect[] of cohabitation" and further held there is a "presumption that the divorced woman's partner/cohabitant is providing financial support, thereby eliminating or reducing her need for support from her ex-husband" unless the unique facts of the case direct otherwise. *Id.* at 1216-17. The *Hammonds* Court adopted a two-prong test which requires chancellors to consider whether a third party provides support to the recipient spouse and whether the recipient spouse contributes to the support of the third party. *Id.*

¶10.    In *Ellis v. Ellis*, 651 So. 2d 1068 (Miss. 1995), the Court again remanded a case for a chancellor to determine (1) if there was cohabitation, (2) if the ex-wife was being supported by or was supporting her suitor, and (3) if her financial needs had changed due to the cohabitation and/or support. *Ellis*, 651 So. 2d at 1074. The *Ellis* Court cited a Florida[5] case which stated that cohabitation will raise a presumption of a material change in circumstances, but cohabitation alone does not require an automatic reduction or termination of alimony. *Id.* at 1072.

¶11.    In *Scharwath*, this Court officially adopted the Florida rule and held "that proof of cohabitation creates a presumption that a material change in circumstances has occurred." *Scharwath v. Scharwath*, 702 So. 2d 1210, 1211 (Miss. 1997). This presumption shifts the

---

[5] *DePoorter v. DePoorter*, 509 So. 2d 1141 (Fla. App. 1 Dist.1987).

6

burden to the recipient spouse to produce evidence contradicting mutual financial support. *Id.* However, the paying spouse still must show that the cohabitation results in "a situation of mutual support between the recipient spouse and another individual which alters the recipient spouse's financial needs" before alimony can be modified. *Id.*

¶12. At the conclusion of the presentation of evidence by Patrick, the chancellor denied Lindalyn's motion to dismiss, satisfied that Patrick had offered sufficient evidence of cohabitation and mutual support, which required Lindalyn to offer evidence related to mutual financial support. Lindalyn admitted that she lived with Curtis, but without sexual relations, and that they mutually supported one another. However, she denied that her financial needs had been altered due to the cohabitation and mutual support. After the parties concluded presentation of their proof, the chancellor announced she would take the case under advisement and would issue a written opinion.

¶13. The chancellor reviewed the evidence, considered the law, and issued an extensive, nine-page Findings of Fact and Conclusions of Law. The chancellor found that Patrick had failed to prove that Lindalyn's financial needs were altered by her cohabitation with Curtis or the mutual support provided by Curtis. The chancellor found that there was no doubt that Lindalyn was receiving mutual financial support from Curtis. However, the chancellor noted that this was a "factually unique scenario . . . in which [Lindalyn] has no choice but to cohabit[] with another individual in order to survive." The testimony presented by Brenda Stepro and Haidee Sheffield, Dr. Koch's psychological report, and evidence of Lindalyn's

7

prior living arrangements all support the chancellor's finding that Lindalyn must live with another person.

¶14. The chancellor held that "[w]ithout the $650.00 she receives from Patrick, Lindalyn would not be able to meet her financial obligations each month without accruing . . . penalties from withdrawals on the retirement account." Reviewing the evidence submitted to the chancellor, there is sufficient proof that the support provided by Curtis to Lindalyn was not enough to justify eliminating or reducing Lindalyn's support from Patrick. We find that the chancellor did not abuse her discretion in denying Patrick's motion to terminate or modify alimony.

¶15. Finally, Patrick argued that the chancellor had abused her discretion in awarding Lindalyn her unpaid attorneys' fees. The award of attorneys' fees and costs in divorce cases is within the sound discretion of the chancellor. ***Brooks v. Brooks***, 652 So. 2d 1113, 1120 (Miss. 1995). We find the chancellor did not abuse her discretion in finding that Lindalyn presently was unable to pay her attorney's fees without withdrawing money from her retirement funds and accruing penalties and that Lindalyn lacked the monthly income to pay her attorney.

## CONCLUSION

¶16. The chancellor followed this Court's instruction in reviewing this matter on a case-by-case basis. In doing so, the chancellor found sufficient evidence that Lindalyn's needs were not altered by the support provided by Curtis. The chancellor did not abuse her discretion in

8

failing to modify alimony or in awarding Lindalyn the remainder of her unpaid attorney's fees. We affirm the findings of the Chancery Court of Jackson County.

¶17.    **AFFIRMED.**

      **WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**