**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2015-CA-00082-COA**

**STEPHANIE LEIGH KITTRELL**                                              **APPELLANT**

**v.**

**STAN EDWARD KITTRELL**                                                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/06/2013 |
| TRIAL JUDGE: | HON. BILLY G. BRIDGES |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | RENEE M. PORTER |
| ATTORNEY FOR APPELLEE: | JAY L. JERNIGAN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | TERMINATED APPELLANT'S AWARD OF ALIMONY |
| DISPOSITION: | REVERSED AND REMANDED - 10/04/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND GREENLEE, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this appeal, we must decide whether the Forrest County Chancery Court erred in

(1) classifying an award of alimony as periodic, and (2) subsequently terminating the award

of alimony based on a finding of a de facto marriage.

**FACTS AND PROCEDURAL HISTORY**

¶2.     Stan and Stephanie Kittrell were married for fourteen years and had one son.[1]  In

December 2005, the chancery court entered a final judgment of divorce based on

---

[1] Dylan Kittrell was born on September 17, 1993.

irreconcilable differences.[2]  The incorporated property-settlement agreement provided in

relevant part:

> Both parties do hereby agree that Stan Kittrell each month shall deposit his monthly retirement check from the Public Employees Retirement System (PERS) into Stephanie Kittrell's bank account via direct deposit with the monthly amount of $250.00 considered child support and the remainder as alimony.  The child support will continue to be deposited monthly until the child's [twenty-first] birthday or until the child no longer lives with the mother.  The remainder of the check shall be considered alimony and shall continue to be paid until the child reaches the age of [twenty-one] or until Stephanie Kittrell remarries.  Stan Kittrell shall receive sixty percent (60%) of the [thirteenth] PERS check and Stephanie Kittrell shall receive forty-percent (40%) of the same until such time as the child reaches the age of [twenty-one] or until the child no longer lives with the mother.  Stephanie Kittrell by signing this document agrees to pay the house note on the marital home out of the PERS money she receives from Stan Kittrell.
>
> Stan Kittrell hereby relinquishes all rights and benefits to Stephanie Kittrell's 401k retirement funds.  Both parties relinquish any right to bonuses, rewards, or financial settlements of any kind.

¶3.     In May 2007, Stan filed a petition for modification of custody, and Stephanie

subsequently filed a counter-petition for contempt.  Among other things, Stephanie alleged

that Stan had failed to pay child support and alimony.  After a hearing, in March 2009, the

chancery court modified custody—granting Stan primary physical custody and terminating

the $250-per-month child-support payments.  Stan was still required to pay alimony.  The

chancery court also entered a judgment against Stan, awarding Stephanie $12,179 for

outstanding alimony and child-support payments and $2,000 for attorney's fees.

¶4.     In June 2009, Stan filed a petition to terminate alimony and enjoin collection of the

March 2009 judgment.  Stan alleged that Stephanie had been incarcerated and was using the

---

[2] Chancellor Sebe Dale Jr. signed the judgment of divorce.

alimony to support her drug addiction. In February 2010, Stephanie filed a petition for citation of contempt, alleging that Stan had failed to pay alimony again. Stan then filed a petition for modification, reiterating his request for termination of alimony.

¶5. At a hearing in November 2012, Stephanie testified that she used methamphetamine from 2005 until 2011. She testified that although she had been indicted for two counts of possession of methamphetamine with the intent to sell, deliver, or transfer, the charges had been dropped. According to Stephanie, drugs were no longer a problem in her life.

¶6. Stephanie also testified that she lived with her boyfriend, Ethan Ewell, from 2005 until October 2009. Since then, Stephanie had been living with her mother. When asked if she and Ewell ever spent the night together, Stephanie responded: "Oh, well, I'm sure, yes." At the time of the hearing, Ewell was incarcerated with ten years remaining on his sentence.

¶7. In May 2013, the chancellor terminated the award of alimony. The chancellor found that Stephanie "was arrested and indicted for conspiracy to sell drugs" and "had lived with [Ewell], off and on," thus resulting in a de facto marriage. Stephanie filed a motion for a new trial and for reconsideration, which was denied. In the chancellor's judgment denying Stephanie's motion to reconsider, the chancellor specifically stated that the alimony was periodic. Stephanie appeals, asserting the chancellor erred in: (1) classifying the award of alimony as periodic, and (2) terminating the award of alimony based on a finding of a de facto marriage.

**STANDARD OF REVIEW**

¶8. This Court "will not disturb the findings of a chancellor when supported by substantial

3

evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, [was] clearly erroneous, or applied an erroneous legal standard." *Lowrey v. Simmons*, 186 So. 3d 907, 911 (¶8) (Miss. Ct. App. 2015) (citation omitted). However, this Court reviews questions of law de novo. *Id.*

## DISCUSSION

¶9. "Although a court order imposing alimony must, in general, clearly identify what type of alimony is being awarded and adhere to its traditional characteristics, our 'Supreme Court has not required consensual support agreements to follow the same terms as for court-imposed alimony.'" *Id.* at 918 (¶30) (quoting *Elliott v. Rogers*, 775 So. 2d 1285, 1289 (¶15) (Miss. Ct. App. 2000)). "Rather, the Supreme Court has emphasized divorcing parties' freedom and 'broad latitude' to settle the financial aspects of their separation by contract as they see fit[.]" *Id.*

¶10. It is because of this broad latitude that this Court is faced with the hopeless task of determining whether the alimony provision in Stan and Stephanie's property-settlement agreement provided for lump-sum or periodic alimony.

¶11. "Lump[-]sum alimony is a final settlement between husband and wife and may not be changed or modified by either party, absent fraud." *Armstrong v. Armstrong*, 618 So. 2d 1278, 1281 (Miss. 1993). Periodic alimony may be modified or terminated if "there has been a material or substantial change in circumstances since the divorce." *Hughes v. Hughes*, 186 So. 3d 394, 397 (¶6) (Miss. Ct. App. 2016). An alimony recipient's "cohabitation" with or "de facto marriage" to another may be a material or substantial change in circumstances. *Id.*

4

¶12. The chancery court held that the alimony in Stan and Stephanie's property-settlement agreement was intended to be periodic. Then the chancery court terminated the award of alimony based on its finding that Stephanie was in a de facto marriage. Stephanie argues the alimony was intended to be lump sum and, therefore, was not modifiable or terminable. In the alternative, Stephanie argues that if the alimony was periodic, there was no evidence of a de facto marriage.

¶13. We agree with Stephanie that there was no evidence of a de facto marriage. And although the chancellor addressed only de facto marriage, we will briefly address cohabitation as well.

¶14. With respect to cohabitation, our supreme court recently stated:

> [P]roof of cohabitation creates a presumption that a material change in circumstances has occurred. This presumption shifts the burden to the recipient spouse to produce evidence contradicting mutual financial support. **However, the paying spouse still must show that the cohabitation results in a situation of mutual support between the recipient spouse and another individual which alters the recipient spouse's financial needs before alimony can be modified.**

*Heiter v. Heiter ex. rel. Sheffield*, 192 So. 3d 992, 996 (¶11) (Miss. 2016) (emphasis added) (internal citations and quotations omitted).

¶15. In June 2009, Stan filed a petition to terminate alimony. At the hearing in November 2012, Stephanie admitted to living with her boyfriend, Ewell, from 2005 until October 2009. However, the record is devoid of evidence that any presumed mutual support altered Stephanie's financial needs.

¶16. "In the absence of cohabitation, alimony can be terminated based on proof of what has

been termed a 'de facto marriage.'" *Hughes*, 186 So. 3d at 400 (¶18). "A de facto marriage may be proven in two ways." *Id.*

> First, a chancellor may find a de facto marriage if the alimony recipient is deliberately avoiding remarriage merely to continue receiving alimony. Second, a de facto marriage can be found absent cohabitation if the alimony recipient and another person have so fashioned their relationship, to include their physical living arrangements and financial affairs, that they could reasonably be considered as having entered into a de facto marriage.

*Id.* (internal citations and quotations omitted).

¶17. Based on the scant testimony in the record, we know that Stephanie lived with Ewell from 2005 until October 2009. And we know that at the time of the hearing, Ewell was incarcerated, with ten years remaining on his sentence. But that is all we know. There was simply no evidence that Stephanie was avoiding remarriage to continue receiving alimony. Nor was there any evidence that Stephanie and Ewell so fashioned their relationship, to include their physical living arrangements and financial affairs, that they could reasonably be considered as having entered into a de facto marriage. Therefore, we must reverse the chancery court's finding that Stephanie was in a de facto marriage.

¶18. We also reverse the chancery court's finding that the alimony provision in Stan and Stephanie's property-settlement agreement provided for periodic alimony. The alimony provision does not strictly adhere to the traditional characteristics of either periodic or lump-sum alimony. *See Lowrey*, 186 So. 3d at 919 (¶33). Accordingly, we will enforce the provision as it is written. *See id.* Because Stephanie did not remarry, Stan was obligated to pay alimony until Dylan reached the age of twenty-one on September 17, 2014. And Stan's thirteenth PERS check would have terminated when Stan was granted custody of Dylan. We

remand this case to the chancery court for a calculation of the specific amount of alimony owed as well as costs and attorney's fees.

¶19.   **THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

   **GRIFFIS, P.J., BARNES, ISHEE, CARLTON, JAMES, WILSON AND GREENLEE, JJ., CONCUR.  IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  FAIR, J., NOT PARTICIPATING.**