GREENLEE, J.,
FOR THE COURT:
¶ 1. This is an appeal from Forrest County Chancery Court where the chancellor awarded sole physical custody of the minor child to Anna Teresa Latourney Bruenderman (Anna). The chancellor also awarded to Anna all of the equity realized in the sale of the marital home. On appeal, Tyrone Ron Bruenderman (Ty) asserts that, in the chancellor’s custody analysis, the chancellor erred by (1) sanctioning him for his adultery, (2) barring admission of Anna’s medical records, and (3) not properly weighing certain testimony. Ty further asserts the chancellor erred in its *206 property division by. awarding one-hundred percent of the equity of the sale of the marital home to Anna. Because the chancery court conducted a proper and complete Albright[1] and Ferguson[2] analysis, and because Ty did not timely seek admission of Anna’s medical records under Mississippi Rule of Evidence 503, we affirm.
FACTS AND PROCEDURAL BACKGROUND
¶ 2. Anna and Ty were married on December 22, 2002, in Reno, Nevada.[3] At the time of their marriage, both- were active-duty military. Anna agreed to terminate her military career in order to facilitate Ty’s career and to care for Ty’s children from a previous marriage.[4] They relocated to Petal, Mississippi, after Ty was ordered to Camp Shelby. After the relocation, Anna began nursing-prerequisite studies at the University of Southern Mississippi,[5] and, by the time of trial, Ty had achieved retirement from the military, .One .child (“the minor child”) was born of the marriage, who was five years old at the time of trial.
¶ 3. On November 07, 2013, Anna filed for divorce on the grounds of adultery. On May 20, 2014, Anna was granted a divorce from Ty on the grounds of adultery. Anna was awarded full physical custody with Ty being awarded visitation rights, and both parties being awarded joint legal custody. The chancéllor found Anna was entitled to, among other things, all of the equity realized from the sale of the marital home[6] and one-third of Ty’s military-retirement benefits,[7] and ordered Ty to pay Anna one-half[8] of the $11,300 in marital property that he had transferred info his mother’s personal bank account. As. part of Ty and Anna’s asset-settlement agreement, Anna received $14,525 in household items, two vehicles totaling $21,688 in value, and $18,000 from a life-insurance policy. As part of the same agreement, Ty received $5,849 in household items, two vehicles totaling $37,197 in value, a boat valued at $6,965, and $18,000 from the life-insurance policy. On December 31, 2014, Ty appealed to this Court.
DISCUSSION
¶4. A chancellor’s findings will be upheld unless he was manifestly wrong, clearly erroneous, or employed an erroneous legal standard, Heiter v. Heiter ex rel. Sheffield, 192 So.3d 992, 994 (¶ 4) (Miss. 2016). A chancellor’s judgment is reviewed for abuse of discretion. Id. at 994-95 (¶ 4). The chancellor is charged with weighing the evidence; thus, his determination will not. be reversed absent manifest, error or. an abuse of discretion. Id. at 995 (¶ 4).
¶ 5. On appeal, Ty asserts that, in the chancellor’s custody analysis (under Al-bright), Axe erred by (1) sanctioning him for his adultery, (2) barring any evidence of Anna’s medical records, and (3) not properly weighing certain other testimony. *207 Ty further asserts the chancellor erred in his property-division analysis (under Ferguson) by awarding one-hundred percent of the equity of the sale of the marital home to Anna.
I. The Court’s Albright Custody Analysis
¶ 6. Ty asserts the chancellor erred in his child-custody Albright analysis by (1) sanctioning him for his adultery, (2) barring any evidence of Anna’s medical history, and (3) not properly weighing other testimony.
¶ 7. In all child-custody cases, the polestar consideration is the best interests of the child. Sellers v. Sellers, 638 So.2d 481, 485 (¶ 4) (Miss. 1994). The Mississippi Supreme Court set forth the following factors to be considered by the chancellor in custody matters: (1) age, health, and sex of the child; (2) “continuity of care prior to the separation”; (3) parenting skills and “willingness and capacity to provide primary child care”; (4) “employment of the parent and responsibilities of that employment"; (5) “physical and mental health and age of the parents”; (6) “emotional ties of parent and child”; (7) moral fitness of the parents; (8) “the home, school[,] and community record of the child”; (9) “the preference of the child at the age sufficient to express a preference by law”; (10) stability of the home and employment of each parent; and (11) any other factors relevant to the relationship between the parent and the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983).
A. Ty’s Adultery
¶ 8. Adultery alone does not disqualify a parent from custodianship. Brekeen v. Brekeen, 880 So.2d 280, 284 (¶ 6) (Miss. 2004) (citing Carr v. Carr, 480 So.2d 1120 (Miss. 1985)). The moral-fitness-of-the-parent factor encompasses the charge of adultery. Id. Adultery may be an unwholesome influence and an impairment to a child’s best interests. Id. But marital fault should not be used as a sanction in custody awards. Id.
¶ 9. In his final judgment, the chancellor made references, either direct or indirect, to Ty’s adultery in approximately twelve lines^ of his five-page Albright custody analysis. Specifically, the' references were made under three factors: moral fitness of the parents, stability of the home environment, and other relevant factors.
¶ 10. Under the moral-fitness factor, the chancellor noted that both Anna and Ty contributed to the breakup of the marriage through their mutual sexual behavior involving multiple partners on at least one occasion; however, the. chancellor found Anna’s testimony — that she begrudgingly participated in a multipartner sexual encounter in an effort to appease Ty — more credible than Ty’s testimony that Anna was a willing participant. The chancellor also noted the evidence of Anna’s devout Catholicism, active participation in religion, and desire to raise her son in a religious environment weighed in her favor under this factor.
¶ 11. Under the stability-of-the-home-environment factor, the chancellor noted that the minor child would have to acclimate himself to new surroundings regardless of who ,was awarded custody, that Anna had a much more certain plan for the future than Ty, and that .Ty’s past behavior, namely his philandering, was the source of the instability in the marriage and family unit. On the whole, the chancellor found the factor to favor Anna.
¶ 12. Under the catchall factor, the chancellor found it contradictory that Ty asserted Anna was unfit to raise their child given that Ty appeared to consider her perfectly fit to raise his children from his previous marriage through his allowing *208 her to raise them. The chancellor also found that Anna’s seeking therapy was at least partly due to Ty’s philandering. The chancellor wrote further only to state that the court-appointed guardian ad litem recommended in his written report and testimony that Anna should retain custody.
¶ 13. Though there are an additional two pages devoted to an analysis of the alleged adultery, there is no indication that such an analysis was inappropriate, as Anna filed for divorce on the ground of adultery and the chancellor was required to make a finding of fact as to whether a divorce on such grounds was warranted. Notwithstanding the fact that this was an adultery-grounded divorce, this Court has upheld awards of custody where adultery was discussed in the Albright analysis. Thurman v. Johnson, 998 So.2d 1026, 1029 (¶ 14) (Miss. Ct. App. 2008). Thus, we find the chancellor conducted an appropriate Al-bright analysis, considered all relevant factors applicable to the circumstances of the case now before us, and did not overemphasize Ty’s adultery. Thus, this issue is without merit.
B. Anna’s Medical History
¶ 14. Ty asserts he should have been granted access to Anna’s psychiatric records because they are not privileged under Mississippi Rule of Evidence 503.
¶ 15. Rule 503 states that there is a privilege between patient and psychotherapist; however, Rule 503(d)(4) states that the privilege does not apply to communications — including records — regarding a part/s physical, mental, or emotional health or drug or alcohol condition when relevant to child custody, visitation, adoption, or termination of parental rights. The comments to the rule state that some factors the court should consider when evaluating such evidence under Rule 503 include whether: (1) the treatment was recent enough to be relevant; (2) substantive independent evidence of serious impairment exists; (3) sufficient evidence is unavailable elsewhere; (4) court-ordered evaluations are an inadequate substitute; and (5) given the severity of the alleged disorder, communications made in the course of treatment are likely to be relevant. M.R.E, 503 cmt.
¶ 16. Here, Ty subpoenaed Anna’s psychiatrist for a deposition one week pri- or to trial and did not request a continuance to allow him time to attempt to obtain those records. Though the chancery court ruled that Ty could pursue Anna’s records, he did not, nor did Ty ever move to compel the production of those records. It is well established that the burden is on the mov-ant to request a continuance to pursue discovery matters, and failure to do so constitutes waiver. Ford Motor Co. v. Tennin, 960 So.2d 379, 394-95 (¶ 54) (Miss. 2007); see also generally URCCC 4.04; M.R.C.P. 37.
¶ 17. The chancellor noted that there was no testimony of any major mental or physical problems of either party nor any evidence showing that discovery of any of Anna’s psychiatric records would be relevant to the chancery court’s custody analysis. The chancellor found that, based on what was before him, Anna’s counseling had more to do with the divorce than any underlying issue affecting her ability to properly care for her and Ty’s child. Thus, we find this issue is without merit.
C. Other Testimony
¶ 18. Ty asserts the chancellor ignored the following in his Albright custody analysis: (1) because Ty-was retired from the Army, he could fully devote himself to his and Anna’s child; (2) the amount of time Anna had spent on her nursing degree; and (3) that Ty served as the primary caregiver while Anna was pursuing a nursing degree. All three of the points *209 raised by Ty were taken into account in the chancellor’s Albright custody analysis.
¶ 19. Under the willingness-and-capacity-to-provide-primary-care factor, the chancellor acknowledged that Ty is retired, but also noted that Ty is currently living in Oregon with his parents and one of his children, and that, should Ty get custody of their son, he intended to move with him to either Oregon or Florida. The chancellor found this particular factor favored Anna because she intended to finish her nursing degree and remain in her son’s present school district, thus providing a greater amount of stability for him as well as increasing her ability to provide for him. Under the eontinuity-of-care factor, the chancellor acknowledged Ty’s testimony that he was the primary caregiver of their child while Anna was pursuing her nursing degree; however, the chancellor found this testimony directly contradicted Carla Whitmill’s testimony (a family friend). Whitmill testified that Anna was the primary caregiver during that time, that Anna would call upon her when she needed help with her child, and that Ty would largely be doing yard work or in the house on his computer.
¶ 20. As a result of that testimony, the chancellor found this factor favored Anna. Regarding the amount of time Anna spent on her nursing degree when she was in school, the chancellor did not directly address this in his opinion. However, under the continuity-of-care factor, the chancellor did find that Anna remained the primary caregiver for the minor child during this time, based on Whitmill’s testimony. And based on our review of the record and the chancellor’s findings, we see no indication that Anna was unsuccessful in caring for her son during her schooling. Because the chancellor took these facts into consideration in his analysis, we fail to find any abuse of discretion in the weight he did or did not give to them. Thus, this issue is without merit.
II. The Court’s Ferguson Property Division
¶ 21. Ty asserts the chancellor erred by awarding one-hundred percent of the marital-home equity to Anna because such was done in order to punish him.
¶22. Distribution of marital assets will be affirmed if supported by substantial credible evidence. Lowrey v. Lowrey, 25 So.3d 274, 285 (¶ 26) (Miss. 2009). A chancellor is required to make findings of fact regarding all applicable Ferguson factors. Id. “Marital misconduct is a viable factor entitled to be given weight by the chancellor when the misconduct places a burden on the stability and harmony of the marital and family relationship^].” Id. “An equitable division of property does not necessarily mean an equal division of property.” Id. “Fairness is the prevailing guideline in marital division.” Id. (quoting Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss. 1994)).
¶ 23. Ferguson requires consideration of the following factors, or a finding of inapplicability: (1) “substantial contribution to the accumulation of the property’; (2) “the degree to which each spouse has expended, withdrawn, or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree, or otherwise”; (3) “the market value and the emotional value of the assets subject to distribution”; (4) “the value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse”; (5) “tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution”; (6) “the ex *210 tent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties”; (7) “the needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity”; and (8) “any other factor which in equity should be considered.” Lowrey, 25 So.3d at 286 (¶ 28) (citing Ferguson, 639 So.2d at 928).
¶24. When determining contribution (factor one above), the subfactors to be considered are as follows: (a) “direct or indirect economic contribution to the acquisition of the property”; (b) “contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage”; and (c) “contribution to the education, training, or other accomplishment bearing on the earning power of the spouse accumulating the assets.” Id.
¶25. Here, the chancellor made findings of fact regarding all of the Ferguson factors, and his findings were based upon substantial credible evidence before' him. In his analysis, the chancellor considered Ty’s marital misconduct, which was within his sound discretion to do, as it was established that his misconduct placed a burden on the stability and harmony of the marital and family relationships. Further, the chancellor found it highly significant that Anna quit her military career for the sake of the family and that Ty was receiving military-retirement benefits because he was able to stay in his career for the requisite time.
¶26. The chancellor noted that had Anna not quit her career, all else being held constant, she would be only three years away from military retirement at the date of the chancery court’s judgment. The court further noted that, in order for Anna to provide for herself and for her child, she would most likely need to complete her schooling, and will likely need a sizeable amount of liquid assets until she can complete her schooling and attain a more stable and substantial income. Because Ty was retired and drawing retirement compensation, there was less of a need for liquid assets for him, and Ty received substantial personal property in the asset-settlement agreement.
¶27. The chancellor also noted that there was evidence that Ty had disposed of marital assets in the days before being served with process in this action. The chancellor did take Ty’s philandering into account under the stability-and-harmony-of-the-marital-home factor, which was within his discretion to consider and highly relevant under that factor. Thus, because we find that the chancellor properly considered the evidence before him in his Ferguson property-division analysis, specifically the evidence of Ty’s philandering, we find this issue is without merit.
CONCLUSION
¶ 28. For these reasons, we affirm the judgment of the chancery court.
¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.

. Albright v. Albright, 437 So.2d 1003 (Miss. 1983).

. Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994).

. At the time of the marriage, Anna was seventeen years old and Ty was twenty-seven years old.

. Anna agreed so that Ty could retain custody of his children from his previous marriage.

. Anna was forced to suspend her course work due to her and Ty’s divorce, including the related' fallout, litigation, and’ this appeal.

. Approximately $57,050,

. Approximately $650 per month.

. $5,650,